UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EMMANUEL GUOBADIA,

|  | |  |
|---|---|---|
| | Plaintiff, | DECISION and ORDER |
| -vs- | | |
| | | 18-CV-6374 CJS |
| DEPUTY OWEN, DEPUTY KESTER DEPUTY HARRISON and DEPUTY WETHERBY, | | |
| | Defendants. | |

_____

INTRODUCTION

Emmanuel Guobadia ("Guobadia" or "Plaintiff"), an inmate in the federal Bureau of Prisons, maintains that while he was a pretrial detainee housed by the U.S. Marshal at the Steuben County Jail ("the Jail"), Defendants, all employed as corrections officers at the Jail, violated his rights under the Fourteenth Amendment to the United States Constitution by subjecting him to excessive force. Now before the Court are the following applications: 1) Defendants' motion to dismiss and/or for summary judgment (ECF No. 37); and 2) Plaintiff's motion for default judgment (ECF No. 38). For the reasons discussed below Plaintiff's motion for default judgment is denied and Defendants' motion for summary judgment is granted.

BACKGROUND

Unless otherwise indicated the following are the facts of the case viewed in the light most-favorable to Plaintiff. In or about August 2017, the U.S. Marshal placed Plaintiff at the Jail to await the disposition of criminal charges against him in U.S. District Court for the Western District of New York. Upon Plaintiff's arrival at the Jail, he was provided with a copy of the Jail's Inmate

Handbook which included rules and procedures concerning the filing of inmate grievances.[1]   In that regard, the Inmate Handbook stated in pertinent part that grievances had to be filed within five days of the incident being complained of.[2]

On April 18, 2018, in Unit 6 of the Jail, corrections officers conducted a search of Plaintiff's cell and discovered that it contained various things, mainly food items, that Plaintiff was not permitted to have.  In addition, Defendants maintain that Plaintiff became disruptive during the search, and threatened to kill jail staff, though Plaintiff denies that.  Nevertheless, officials at the Jail charged Plaintiff with infractions including threatening and disruptive conduct and possession of prohibited food and drink items.[3]

Because of the alleged disciplinary infractions, members of the Jail's Corrections Emergency Response Team ("CERT") escorted  Plaintiff to a "keeplock" cell in Unit 3 of the Jail. Plaintiff was handcuffed behind his back, and the officers walked behind him, where he could not see them.  Plaintiff nevertheless maintains that the escorting officers were Owen, Kester, Harrison and Wetherby.[4]  Defendants contend that Kester was not actually present during the escort, but Plaintiff maintains that he was able to identify Kester by his voice.[5]

Plaintiff alleges that during the transport, he obeyed the officers commands and did not attempt to pull away from them, but that the officers twisted his handcuffs, thereby bending his

---

[1] On August 30, 2017, Plaintiff signed a receipt indicating, *inter alia*, that he had received a copy of the Inmate Handbook. Defendants' Motion, ECF No. 37, Exhibit I.  However, the copy of the Inmate Handbook submitted along with Defendants' motion is obviously not the same handbook that Plaintiff received, since it indicates that it was updated in April 2019. *Id*.

[2] *See*, Defs. Mem. of Law, ECF No. 37-20 at p. 7 (Explaining that the Jail's "5-day rule" is in accordance with New York State law, 9 NYCRR 7032.4(d), which states in pertinent part that "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance.".

[3] Pl. Dep. at pp. 52–53; *see also*, disciplinary charges, ECF No. 19 at p. 13.

[4] Defendants maintain that Kester only visited Plaintiff's keeplock cell later that day, to observe the cut injury to Plaintiff's head.

[5] Pl. Dep. at pp. 56–57 ("I know he [(Kester)] joined them.  When we were going I heard him talking.").

arms into a very painful position, and also "verbally harassed" and threatened to kill him.[6] Plaintiff contends that once inside the keeplock cell, the officers slammed his head against "a brick cell wall numerous times," causing injuries consisting of a laceration to the top of his head, blurred vision, a fractured nose and brain swelling.[7]  Defendants, however, maintain that Plaintiff slammed his own head against the wall after they exited the cell.  Defendants also contend that Plaintiff repeatedly declined to be examined by medical staff.[8]

On May 15, 2018, less than one month after the alleged assault, Plaintiff commenced this action proceeding *pro se*.[9]  The Complaint purports to assert a federal constitutional claim for "cruel and unusual punishment" and "failure to protect."[10]  The pleading alleges that on April 18, 2018, Defendants violated Plaintiff's Fourteenth Amendment rights by using excessive force against him and/or by failing to intervene.

The Complaint asserts that Plaintiff exhausted his administrative remedies before filing the action, stating: "Yes, I grieved this claim and the result was they were sent to high up due to problem not being resolved."[11]  Attached to the Complaint is a copy of a grievance, written by Plaintiff on May 11, 2018, and received by Jail staff on May 13, 2018, which the Court will discuss in greater detail below.

---

[6] Compl. at p. 3.

[7] Compl. at p. 2.

[8] The record indicates that on April 22, 2018, four days after the alleged assault, Plaintiff was examined by nurse practitioner Muriel Brown, MS, GNP-BC, RN, related to Plaintiff's claim that he had been assaulted on April 18th. Brown reported that Plaintiff, who claimed that officers slammed his head against "the cell block wall 4-5 times," had "a resolving minor, superficial laceration of the right scalp that measured 3.0 x 0.2 cm." Brown noted that Plaintiff received additional medical treatment on April 24th, May 3rd, May 4th and May 17th. ECF NO. 38 at pp. 22-23.

[9] The Complaint was actually filed on May 18, 2018, but Plaintiff signed the Complaint on May 15, 2018. *See*, Compl. at p. 4.

[10] Compl. at p. 3.

[11] Compl. at p. 3.

The Complaint purported to sue the Steuben County Jail, Harrison, Kester, Owen and Wetherby.   Along with the Complaint, Plaintiff filed a motion for leave to proceed *in forma pauperis*.   On August 10, 2018, the Court issued an Order granting Plaintiff's application to proceed *in forma pauperis*, dismissing Steuben County Jail from the action, and dismissing Plaintiff's claim based on verbal harassment.   However, the Court permitted the claim based on excessive force to proceed against Harrison, Kester, Owen and Wetherby.

On October 22, 2018, Defendants answered the Complaint.   On November 2, 2018, the Court referred this case to the Honorable Marian W. Payson, United States Magistrate Judge, for all non-dispositive pretrial matters.

On December 21, 2018, Defendants filed Rule 26 disclosures that included Plaintiff's inmate file and medical file from the Jail.   Of particular relevance to this action, the documents include all grievances filed by Plaintiff during his confinement at the Jail.

On March 14, 2019, Magistrate Judge Payson issued an Amended Scheduling Order (ECF No. 28) directing, *inter alia*, that all discovery be completed by May 28, 2019, and that any motions to compel discovery be filed by June 4, 2019.

On April 22, 2019, Defendants deposed Plaintiff.[12]   As already noted, Defendants maintain that Kester was not involved in the incident, but Plaintiff testified that Kester joined the other three defendants somewhere along the route between Unit 6 and Unit 3.   Plaintiff also testified that he did not remember whether he had filed an inmate grievance concerning the alleged use of excessive force on April 18, 2018.[13]

The Rule 26 materials produced by Defendants, however, show that Plaintiff filed a few

---

[12] *See*, Dep. Tr., ECF No. 37-14.
[13] *See*, Dep. Tr. at p. 48 ("Q.  . . .  Do you recall filing a grievance arising out of the April 18th, 2018 incident?  A. That I do not remember if I did nor not.").

4

inmate grievances referencing the alleged excessive force.  On May 13, 2018, Plaintiff submitted

a grievance indicating that it was the third time he was submitting the grievance concerning "the

injury that I sustained on 04-18-2018."  Although, there is no evidence of any earlier grievances

having been filed.  Rather, it appears that any prior complaints that Plaintiff made about the

incident were made to medical staff.[14]  In any event, this grievance, a copy of which was attached

to Plaintiff's Complaint in this action, states:

> To whom it may concern, this is the third time I am sending in this grievance
> concerning the injury that I sustained on 04-18-2018.  It's like nobody is really
> interested when it come to Mr. Guobadia or maybe my grievance does not get to
> someone's desk.  Maybe it goes in the trash can.
>
> On the 18-04-2018 officers at Steuben County Jail – they came to my cell and
> searched, during the search they found commissary items.  I told them some of
> the items was not from Steuben County that I bought these item from another jail,
> they claim am not supposed to have any commissary because I never had money
> in my account and I was also on diet I told them that the stuff that I had does not
> have anything that [was] restricted from like hygiene cups, bowls, lotion, some food
> items like Sazon or seasoning they claim am still not supposed to have anything, I
> was ordered to get on my knees I did immediately and put my hands behind my
> back I obeyed they took me out of my cell and escort me  to the box this time was
> on handcuffs my both hands behind my back walking out Unit 6 there was no
> violence, immediately they got out of the Unit, Unit 6 to the hallway they started
> twisting my wrist I told the officers that I as feeling excessive pain.  Immediately I
> said that they were been more aggressive trying to rip off my wrist from my joints I
> had to cry out because of the pain the more I cry the more aggressively they were.
> Immediately they got to the box Unit 3 it was even worse I begged for them to stop,
> they told me to shut up they took me inside Cell 18 in Unit 3 and started beating
> and hit my head into the wall about 5 times and called me a nobody and a nigger.
> At this time I passed out and when I regained consciousness they were gone.
>
> As a matter of fact whosoever this may concern can please request the videos at

---

[14] Having reviewed the entire record, the inference drawn by the Court is that the earlier "grievances" referred to
by Plaintiff were letters that he sent to the Jail's medical staff. *See*, ECF No. 24-2 at p. 36 (Copy of grievance filed
by Plaintiff on May 16, 2018, requesting medical attention, stating in pertinent part:  "I had previously *wrote to
medical* multiple times regarding . . . the injury I sustained from getting beat up by Deputies of the Steuben
County Jail.") (emphasis added); *see also*, Sick Call slip dated May 12, 2018, ECF No. 24-4 at p. 52 ("To whom it
may concern I earlier report an issue regarding my eye vision after the C.O.s hit my head to the multiple times[.]").

the time I was being escorted out of the box and the scene at the hallway and the scene at the box Unit 3 and also the video of the scene in Cell 18 in Unit 3 because they had a body camera on I believe, they had some stuff on the shirt I believe that was a body camera, now am having a lot of medical issues.

I cannot see properly in my right eye and my head was busted wide open with blood everywhere there's a big scar on my head pictures were taken when I went to the nurse am kind of having a mental issue now which I never had before people look at me recently and say am crazy I don't understand why they say I been talking to myself and sometimes in my cell I hear voices[15] and my cell walls be talking to me, the names of the C.O.s involved in this act: 1) Harrison 2) Owen 3) Kester 4) Weatherby.  The also mock my accent,[16] called me names I never understood what it meant and they also say I do not belong here.  To whom it may concern please help me am a human being not an animal. [sic]

Compl., ECF No. 1 at pp. 5–7.

On May 16, 2018, Plaintiff filed another grievance referencing the subject incident.  In particular, the grievance indicated that Plaintiff was requesting medical attention for injuries that he had "sustained from getting beat up by deputies of the Steuben County Jail."[17]  The grievance stated in pertinent part: "To whom it may concern I had previously wrote to medical multiple times regarding the pains that I feel in my back and other issues regarding my eye, chest, constant headaches, I am going blind because of the injury I sustained from getting beat up by the Deputies of Steuben County Jail.  I need medical attention."  A notation attached to the grievance indicates that on May 20, 2018, Sergeant Shawn Gardiner ("S. Gardiner") spoke with Plaintiff informally about the grievance and marked it as having been resolved informally, noting, "Inmate was seen by medical already."[18]  A similar notation by Gardiner also appears on a copy

---

[15] Although Plaintiff blame his alleged loss of vision and auditory hallucinations on the alleged assault by Defendants, months prior to the alleged attack he filed a request for medical attention, also complaining of vision loss and hearing voices. *See*, Rule 26 Disclosures, at p. 206.
[16] Plaintiff was born in Nigeria.
[17] ECF No. 24-2 at p. 36.
[18] ECF No. 24-2 at p. 37.

of the grievance that Plaintiff had previously filed on May 13, 2018.[19]  It therefore appears that

Gardiner marked both grievances as having been simultaneously resolved informally, by virtue

of Plaintiff having received the medical attention he had been requesting.  Plaintiff did not appeal.

On May 20, 2018, Plaintiff filed another grievance, which was assigned grievance number

2018-094.[20]  The grievance stated in pertinent part:

> On the day 04-18-2018 I was beaten up and bleeded heavily from the injury I
> sustained, by the deputies hitting my head to the wall, deputys Owen, Kester,
> Harrison, Weather-bee, they came to Unit 6 and claim I have commissary I was
> told to get on my knees and my hands behind my back.  I didn't disobey.  I obeyed
> immediately.  They left Unit.  They were [being] aggressive.

(ECF No. 24-2 at p. 49.  Plaintiff also attached to the grievance two pages of additional details

that he had previously filed with his initial grievance on May 13, 2018.[21]  On May 23, 2018,

Sergeant Lorrie Gardiner ("L. Gardiner") denied the grievance as untimely since it had not been

filed within five days of the incident.[22]  In that regard, it is undisputed that as set forth in the

Inmate Handbook that Plaintiff received upon his arrival at the Jail, inmate grievances had to be

filed within five days of the incident being grieved.  Plaintiff appealed, stating:

> To whom it may concern I earlier grieved the issue that occurred around about the
> period the incident occurred between me and the C.O.s or deputies, the grievance
> was sent.  Sergeant Gardiner brought the grievance [back] and told me I did not
> say in writing what action requested the day the grievance was sent.  [In the
> grievance Plaintiff filed on May 13, 2018, he had left the "action requested" section
> of the grievance form blank, *see*, ECF No. 24-2 at p. 34.] I was asked to fill [out]
> another grievance and I did which was on 05-20-2018.  I guess denying the
> grievance is a way to take sides with the deputies.  Also am appealing it now.  I
> want action to be taken.

ECF No. 24-2 at p. 55.  (The Court observes that the "earlier grievance" to which Plaintiff refers

---

[19] ECF No. 24-2 at p. 34.
[20] ECF No. 24-1 at pp. 17, 38–39, 44–47; ECF No. 24-2 at pp. 49–55.
[21] ECF No. 24-2 at pp. 50–51.
[22] ECF No. 24-2 at p. 49.

in his appeal is the May 13, 2022, grievance, which S. Gardiner marked as having been resolved informally, and which Plaintiff did not appeal.)  On May 31, 2018, Plaintiff's appeal was denied.[23]

The period in which to conduct discovery in this action subsequently expired and no motion to compel was filed.  On June 27, 2019, Magistrate Judge Payson issued an Amended Scheduling Order (ECF No. 34) directing, *inter alia*, that any dispositive motions be filed by August 19, 2019.  Magistrate Judge Payson subsequently extended that deadline to September 3, 2019. *See,* Order (ECF No. 35).  Then, on September 3, 2019, Magistrate Judge Payson further extended that deadline, by one day, to September 4, 2019.  *See*, Letter Order (ECF No. 36).

On September 4, 2019, Defendants timely filed the subject motion for dismissal and/or summary judgment, along with the required *Irby* notice to *pro se* litigants.  Defendants assert the following arguments:  1) the Complaint "fails to state a claim" since Plaintiff did not exhaust his administrative remedies before commencing this action as required by 42 U.S.C. § 1997e(a); 2) the Complaint fails to state a claim for excessive force since Plaintiff cannot say which of the Defendants was "personally involved" in using excessive force against him;[24] 3) Plaintiff cannot prevail on his excessive force claim since he has not shown that he sustained an "objective injury";[25] and 4) the Complaint fails to plead any state-law claims.

---

[23] ECF No. 24-2 at p. 53.

[24] As part of this argument, Defendants assert that the injury to Plaintiff's head is "the only allegation of excessive force" (ECF No 37-20 at p. 9), which is incorrect, since Plaintiff also maintains that Defendants used excessive force against him during the escort by twisting his arms.  Moreover, Plaintiff would appear to have a failure to intervene claim at the very least.  Defendants also assert that Plaintiff fails to identify Kester as one of his attackers, but that, too, is inaccurate, since Plaintiff testified that he could hear Kester behind him.  Nor is a plaintiff alleging excessive force by multiple officers necessarily required to state who did what to him where that would not be possible. *See,e.g. Arias v. East Hartford*, No. 3:20-CV-00895 (JCH), 2021 WL 3268846, at *4 (D. Conn. July 30, 2021).

[25] On this point Defendants state, in pertinent part: "Plaintiff alleges that . . . he sustained blurred vision in one eye, a swollen brain, and a broken nose as a result of the incident.  However, Plaintiff has been unable to offer any objective proof to support these alleged injuries." ECF No. 37-20 at p. 13.  However, it is undisputed that Plaintiff sustained a small laceration to his head and that multiple jail employees observed blood on the floor of Plaintiff's cell.  The question is not whether Plaintiff sustained some injury, but, rather, who caused the injury.

On September 5, 2019, the day after Defendants filed their motion, Plaintiff filed a motion for default judgment (ECF No. 38), alleging that Defendants had failed to comply with the Scheduling Order's deadline for filing dispositive motions.

On October 7, 2019, Plaintiff filed a response (ECF No. 39) to Defendants' motion.  On October 29, 2019, Defendants filed a reply (ECF No. 42).

The Court has considered the parties' submissions and the entire record.

APPLICABLE LEGAL PRINCIPLES

<u>Plaintiff's *Pro Se* Status</u>

Plaintiff is proceeding *pro se*.  Accordingly, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

<u>Plaintiff's Motion for Default Judgment</u>

Plaintiff contends that he is entitled to default judgment because Defendants disobeyed a court order by not filing their dispositive motion by September 3, 2019.  However, Plaintiff is mistaken on that point, and even so the Court would not grant him default judgment on that basis.  With regard to Plaintiff's mistake concerning the deadline, when the Plaintiff filed the motion for default judgment he had, regrettably, not received notice that Magistrate Judge Payson had extended Defendants' filing deadline by one day, from September 3rd to September 4th.  *See*, ECF No. 36. This was owing to Plaintiff being in jail.  As a result,  Plaintiff signed the motion for default judgment on September 4, 2019, thinking that Defendants' deadline had passed, when in fact it had not.[26]  Nevertheless, Plaintiff's application (ECF No. 38) lacks merit

---

[26] Plaintiff's decision to file the motion on September 4th was ill advised in any event, since even assuming that Defendants had filed their motion on September 3rd, Plaintiff would not have received notice of such filing by the following day.

and is denied.

Motion Under Fed. R. Civ. P. 12(b)(6)

Defendants seek dismissal under Rule 12(b)(6).  The legal standards to be applied on a

motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) [("*Iqbal*")].

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007);

*see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To

survive dismissal, the plaintiff must provide the grounds upon which his claim rests through

factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell*

*Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (citation omitted).

<u>Rule 56</u>

Alternatively, Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts

contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

For reasons discussed below, the Court finds that Defendants have not shown their entitlement to relief under Rule 12(b)(6) but have shown that they are entitled to summary judgment.

<u>Exhaustion of Administrative Remedies</u>

Inmates and pretrial detainees are required to exhaust administrative remedies *before* asserting a federal claim in federal court complaining about jail or prison conditions. *See*, 42 U.S.C.A. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). However, despite this general requirement,

> [p]risoners are exempt from the exhaustion requirement when administrative remedies are unavailable. An administrative procedure is unavailable when (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that it becomes, practically speaking, incapable of use; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Amaker v. Bradt*, 745 F. App'x 412 (2d Cir. Dec. 19, 2018) (citations and internal quotation marks omitted).

If administrative remedies were "available" to the inmate plaintiff, then he must have "properly" exhausted his remedies:

Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S.Ct. 2378 (2006), internal quotation marks omitted).

DISCUSSION

In this action, Defendants maintain that Plaintiff did not comply with § 1997e(a) since he did not properly exhaust his jail grievance before commencing this action.   In pertinent part, Defendants state:

> Here, Plaintiff alleges that the incident occurred on April 18, 2018.  He further alleges that he complied with the exhaustion requirements but gives no details for when he filed his grievance. *See* Exhibit A [(Complaint)].  However, Plaintiff did not attempt to file a grievance until May 13, 2018, almost a month after the incident. That grievance was rejected as it had no details in it whatsoever, and Plaintiff did not file a proper grievance until May 20, 2018, two days after his Complaint was filed in this case. *See* Exhibit E [(Grievance 2018-094)].   This grievance was denied as it was beyond the five (5) day deadline to file a grievance.  While Plaintiff did appeal the denial of his grievance, the appeal was cursory as he had already failed to properly exhaust his administrative remedies.

ECF No. 37-20 at p. 7.

Defendants' argument on this point is not entirely accurate, since the grievance that Plaintiff filed on May 13, 2018, actually contained plenty of details.   In arguing otherwise, Defendants appear to be overlooking the two additional sheets of paper that were attached to the grievance. *See*, ECF No. 1 at pp. 5-7 ("continues from white sheet"); ECF No. 24-2 at p. 34. Moreover, while the grievance was arguably incomplete inasmuch as it left the "action requested" section blank,  the grievance was not denied on that basis.  Rather, as noted above, on May 30, 2018, Sergeant S. Gardiner marked the grievance as having been resolved informally by Plaintiff receiving medical attention, *see*, ECF No. 24-2 at p. 34, and Plaintiff did

not appeal.

Defendants are also incorrect to assert that Plaintiff's alleged failure to comply with § 1997e(a) amounts to a "failure to state a claim." Compliance with § 1997e(a) is neither a jurisdictional requirement nor a pleading requirement. Rather, failure to comply with § 1997e(a) is an affirmative defense in a Section 1983 prisoner action. *See, Rucker v. Giffen*, No. 20-1318, 2021 WL 1803655 (2d Cir. May 6, 2021) ("[A] prisoner need not specifically plead or demonstrate exhaustion in the complaint because failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.") (internal quotation marks omitted). As such, dismissal of a complaint under Rule 12(b)(6) based on failure to comply with § 1997e(a) would be appropriate only if the failure to exhaust was obvious from the face of the complaint, which is not the case here. Accordingly, the Court considers Defendants' motion on this point under Rule 56, not Rule 12(b)(6).

However, Defendants are correct that Plaintiff did not file any grievance concerning the alleged assault until May 13, 2018, almost a month after the incident, by which time it was clearly untimely. Moreover, Plaintiff did not file a complete grievance until he filed Grievance 2018-094 on May 20, 2018, two days *after* he filed this action. Accordingly, Defendants have adequately shown, in the first instance, that regarding Plaintiff's failure to comply with § 1997e(a), there are no issues of fact and Defendants are entitled to judgment as a matter of law.

In opposition to Defendants' motion pursuant to § 1997e(a), Plaintiff does not dispute that he filed his grievance well beyond the filing deadline. Instead, after previously asserting that he had exhausted his administrative remedies (*See*, Complaint), he now argues that administrative remedies were not "available" to him and/or that Defendants should be "estopped" from raising a failure-to-exhaust as a defense. For example, Plaintiff's response states:

> Defendants' actions made administrative remedies unavailable to the Plaintiff, as Defendants actions was a major threat to Plaintiff's life the excessive force and evil actions by the Defendants had Plaintiff's life on the line, moreover Defendants should be estopped from raising non-exhaustion as a defense.

ECF No. 39 at p. 23.  Additionally, Plaintiff's memorandum of law states, in pertinent part:

> Plaintiff could not file a grievance within the five days, because of Plaintiff's health even as of May 13, and 16, 20, 2018 Plaintiff was not still in good health condition and was struggling to fill the grievance form.  Defendants Deputy Wetherby (Weatherby), Owen, Harrison, Kester, (collectively) actions inhibited Plaintiff's ability to file a grievance within the expected time, and should be considered as a matter of law and circumstances surrounding the incident.

ECF No. 39 at p. 41.

Liberally construing Plaintiff's response, he is asserting that Defendants should be estopped from raising the affirmative defense since they injured him so seriously during the alleged assault that he was too ill to file a grievance until May 20, 2018, when he filed Grievance 2018-094.

A defendant could be estopped from asserting a failure-to-exhaust defense where he prevented an inmate from filing a grievance, such as by threatening the inmate not to file a grievance. *See, e.g., Daum v. Doe*, No. 13-CV-00088V(F), 2016 WL 11481727, at *6 (W.D.N.Y. Apr. 21, 2016) ("[T]he serious nature of Plaintiff's injury and subsequent threats could cause a prisoner of ordinary firmness to conclude that the IGP grievance procedures were not available[.]") (collecting cases), report and recommendation adopted, No. 13-CV-88V(F), 2016 WL 3411558 (W.D.N.Y. June 22, 2016).  On the other hand, it appears less clear whether such estoppel would apply where, as here, the inmate is claiming that injuries sustained in an assault by a corrections officer prevented him from filing a grievance. *See, Zafuto v. Okeefe*, No. 11-CV-916S, 2014 WL 297102, at *6 (W.D.N.Y. Jan. 27, 2014) ("Zafuto does argue, without citation to authority, that there is an issue of fact as to whether Defendants are estopped from asserting

the exhaustion defense because the named defendants caused Zafuto's injury, which caused him to go to the hospital and thus caused him to be unable to complete a grievance form.  But without any authority suggesting that this type of indirect causation can serve as grounds for estoppel, this Court will not stray from settled law holding that estoppel only applies when a defendant directly impedes an inmate's attempts at exhaustion.") (internal quotation marks and citations to record omitted).

In the instant case, Plaintiff has neither alleged nor shown, in response to Defendants' motion, that Defendants prevented him from filing a grievance, such as by threatening him not to do so.  Indeed, Plaintiff filed grievances concerning the incident, just not within the required deadline.

Moreover, even assuming *arguendo* that estoppel could apply if the injuries sustained by Plaintiff during the incident prevented him from filing a timely grievance, Plaintiff has not shown that his injuries prevented him from doing so.   To begin with, Plaintiff's contention that he was too ill to file a timely grievance is essentially a belated, bald assertion that is insufficient to raise a triable issue of fact.

Additionally, from the Court's own review,  the record does not support Plaintiff's assertion that the injuries that purportedly prevented him from filing a grievance actually existed or, if they did exist, that they were caused by Defendants. For instance, there is no evidence that Plaintiff suffered "brain swelling" or a fractured nose during the alleged use of excessive force.[27]  Nor is there any evidence that the alleged assault injured Plaintiff's vision or caused him to have

---

[27] A CT scan on May 3, 2018, indicated that Plaintiff had a small nasal fracture, but did not state whether the injury was new or old.  Moreover, at the deposition, when specifically asked which part of his head made contact with the wall, Plaintiff said it was, "On top of  my head." Dep. Tr. at p.75; *see also, id*. at p. 76 ("Q. So, the top where you would put a hat, that top of your head? A. Yes.  I would say on the front side on the top of my head, where you put a hat.").  Plaintiff did not say he sustained any injury to his nose. *See*, Dep. Tr. (word "nose" never mentioned during deposition).

auditory hallucinations.    Rather, Plaintiff complained of impaired vision and auditory hallucinations months prior to the alleged incident. *See*, ECF No. 24-4 at p. 45, Medical Call-out Slip dated February 17, 2018 ("My vision is bad I think I am going blind and I think I hear voices too.").

More importantly, Plaintiff's claim of incapacity is squarely refuted by the record, which shows that he was functioning and filing numerous other types of complaints and demands immediately after the alleged assault.  For example, on April 20, 2018, two days after the alleged assault, Plaintiff asked Sergeant L. Gardiner to inventory the bloody t-shirt that he had been wearing during the incident. ECF No. 24-3 at p. 16.[28]  On April 22, 2018, Plaintiff sought care from the Jail's medical staff, claiming that he had been assaulted by officers four days earlier. ECF No. 24-2 at p. 59.  On April 23, 2018, in connection with Plaintiff's then-pending criminal prosecution in the U.S. District Court for the Western District of New York, the Honorable Jonathan W. Feldman, United States Magistrate Judge, received a letter from Plaintiff apparently written by Plaintiff immediately following the subject incident at the Steuben County Jail. *See*, Docket Sheet, *U.S. v. Guobadia*, 6:16-cr-06036-EAW-JWF-1, ECF No. 59 at pp. 7–8.[29]  (In the letter to Judge Feldman, Plaintiff essentially recounted the same claim that he is alleging in this action, although, he also told Judge Feldman that the officers "strangled his neck" before smashing his head against the wall. *Id*.).  On April 25, 2018, Plaintiff requested that the U.S. Marshal Service arrange for him to receive a CT scan. ECF No. 24-4 at p. 27.  On April 26, 2018, Plaintiff appeared in U.S. District Court before the Honorable Jonathan W. Feldman for a suppression hearing in his criminal case and represented himself. *See*, Docket Sheet, *U.S. v.*

---

[28] In doing so, Plaintiff was clearly signaling to the Jail staff that he was planning to pursue some type of punitive action against the officers concerning the alleged assault, which would run contrary to any claim by him that he was fearful of filing a grievance, even if he had made such an argument.
[29] The Court takes judicial notice of events relating to Plaintiff's criminal prosecution in this Court.

*Guobadia*, 6:16-cr-06036-EAW-JWF-1, ECF No. 58.   On April 28, 2018, Plaintiff requested copies of legal documents. ECF No. 24-3 at p. 30.   On May 3, 2018, Plaintiff wrote a grievance complaining that three days earlier he had requested copies of legal documents which he never received. ECF No. 24-2 at p. 32.   On May 4, 2018, Plaintiff met with Jail medical staff and complained that he was not being allowed to purchase commissary items. ECF No. 24-1 at p. 27.   On May 12, 2018, Plaintiff wrote a note to medical staff in which he stated that he had previously reported a problem with his vision after corrections officers hit his head against a wall. ECF No. 24-4 at p. 52.   On May 13, 2018, twenty-five days after the subject incident, Plaintiff wrote out his first inmate grievance concerning the incident, and indicated that he had already complained to medical staff several times about his alleged injuries sustained during the incident. ECF No. 24-2 at p. 34.   On May 14, 2018, Plaintiff sent legal mail to "the Federal Court Building in Rochester." ECF No. 24-2 at p. 47.   On May 15, 2018, Plaintiff requested notarization of legal documents. ECF No. 24-3 at p. 30.  And, on May 16, 2018, Plaintiff wrote to Sergeant L. Gardiner requesting a copy of a receipt. ECF No. 24-1 at p. 18.   These activities contradict Plaintiff's bald assertion that he was unable to file a grievance sooner than he did.

Besides that, even assuming *arguendo* that Plaintiff was truly unable to file a grievance until May 20, 2018, he nevertheless failed to *exhaust* that grievance before commencing this action.  Rather, Plaintiff filed this action before Grievance 2018-094 had even been denied.

For all of these reasons, the Court finds that Plaintiff has not raised a triable issue of fact regarding his failure to exhaust his administrative remedies as required by § 1997e(a), and that Defendants are entitled to summary judgment.  Because the Court finds that Plaintiff unjustifiably failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) it does not consider Defendants' alternative arguments for summary judgment.

CONCLUSION

Defendants' motion for summary judgment (ECF No. 37) is granted and Plaintiff's motion for default judgment (ECF No. 38) is denied.    The Clerk of the Court is directed to enter judgment for Defendants and close this action.   The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
       April 25, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge